# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| CATRENIA MAYNOR<br>     LA. DOC #544326 | CIVIL ACTION NO. 3:13-cv-0674 |
| VS. | SECTION P |
| | JUDGE ROBERT G. JAMES |
| WARDEN, LOUISIANA<br>CORRECTIONAL INSTITUTE FOR<br>WOMEN | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

On April 18, 2013, *pro se* Petitioner Catrenia Maynor filed the instant application for writ

of *habeas corpus* attacking her 2009 conviction for armed robbery and the 30-year hard labor

sentence imposed by the Thirty-Seventh Judicial District Court, Caldwell Parish.  [doc. # 4].

This matter has been referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.  For

reasons assigned below, it is recommended that the Petition [doc. # 4] be **DENIED**.

### *Statement of the Case*

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> James Norris owns a home on Judge Road in rural Caldwell Parish where he has
> lived for many years. For nearly a decade, Norris lived in this home with his
> then-girlfriend, Julia Gill. Gill's daughter, Catrenia Maynor, also lived with Norris
> for some of that time. Norris and Gill separated around 2005, at which time Gill
> moved out of Norris' home.
>
> Norris works out of the country on a rotating schedule; since he is often gone for long
> periods he entered into an arrangement with Betty Johnson to stay at his home, pay
> his bills, and care for his pets when he was away.

On December 14, 2008, Johnson was staying at Norris' home while he was working in Kuwait. Johnson's friend, Bobbie Jo Anders, was staying with her in the home as well. That afternoon a suspicious phone call came into the house phone. When Johnson answered, the caller claimed to have bought a vehicle from Norris and requested the title to that vehicle. Johnson's suspicions were aroused because she did not know of a vehicle that Norris had sold; therefore, she called Norris' brother and Julia Gill to inquire if either knew of this purported sale. Neither knew of any such transaction. Gill then reported the call to the Caldwell Parish Sheriff's Office ("CPSO"), which sent two deputies out to the house to speak with Johnson.

At around 11:00 that evening three individuals broke into Norris' home with guns and began robbing the house. Johnson and Anders were held at gunpoint during the robbery until police arrived on the scene and the perpetrators fled. Three deputies chased down the three perpetrators as they ran from the home. The defendants were caught on the scene and arrested.

Williams, Green, and Maynor were each charged with one count of armed robbery and one count of false imprisonment with a dangerous weapon and tried together before a jury. All three defendants were convicted on all counts and sentenced.

*State v. Williams*, 54 So. 3d 1129, 1132-33 (La. App. 2 Cir. 2010).

On February 9, 2009, Petitioner and her codefendants, Brushun D. Green and Andre T. Williams, were charged with one count of armed robbery and one count of false imprisonment with a dangerous weapon.  [doc. # 16, p. 29-30].  Trial began on June 23, 2009.  *Id.* at 12.  On June 30, 2009, all Defendants were found guilty on both charges.  *Id.* at 55-59.  On September 15, 2009, Petitioner was sentenced to serve concurrent sentences of 30 and 10 years without benefit of parole.  *Id.* at 26.  Her motions to reconsider her sentence were denied on November 17, 2009.  *Id.* at 27.

Petitioner appealed raising the following claims: (1) her convictions for armed robbery and false imprisonment with a dangerous weapon violated the prohibition against double jeopardy; (2) the trial court erred in allowing the State to exercise a peremptory challenge to a

2

potential juror after having already sustained the defense's *Batson*₁ challenge; (3) erroneous

denial of motions for mistrial; (4) improper consolidation; and (5) excessiveness of sentence.

*Williams*, 54 So. 3d at 1135-42.  On November 3, 2010, the Second Circuit affirmed Petitioner's

conviction and sentence for armed robbery, but having determined that her convictions for the

armed robbery charge and the charge of false imprisonment violated the prohibition against

Double Jeopardy, the latter conviction and sentence imposed thereon were vacated.  *Id.* at 1143.

Petitioner's application for writs was denied by the Louisiana Supreme Court on April 25, 2011.

*State v. Maynor*, 62 So. 3d 89 (La. 2011).  She did not seek further direct review in the United

States Supreme Court.

On April 23, 2012, Petitioner filed a *pro se* application for post-conviction relief in the

District Court.  [doc. # 16, p. 259].  Petitioner subsequently sought review of the District Court's

denial of that application in the Second Circuit and the Louisiana Supreme Court.  *Id.* at 310,

311.  The appellate court denied the writ application.  *Id.* at 310.  The Supreme Court denied

writs on March 15, 2013, and denied reconsideration on April 19, 2013.  *State ex rel Maynor v.*

*State*, 109 So. 3d 377 (La. 2013), *rehearing denied*, 111 So. 3d 1026 (2013).

Petitioner filed the instant petition on April 18, 2013, requesting relief for the five claims

raised on appeal as well as an additional claim of ineffective assistance of counsel.  [doc. # 4].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.        Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

3

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.   Petitioner's Claims

A. Claim One: Double Jeopardy

Petitioner contends that her convictions for both armed robbery and false imprisonment violate her rights under the Double Jeopardy Clause.  [doc. # 4-1, p. 9].  However, as her argument has already been successful in state court, it appears that Petitioner makes this claim solely for the purpose of claiming that her trial counsel was ineffective for not objecting to the charges on double jeopardy grounds.

Petitioner's double jeopardy claim is moot.  As mentioned above, the Louisiana Second Circuit Court of Appeal determined that Petitioner's convictions for the armed robbery charge and the charge of false imprisonment violated the prohibition against Double Jeopardy. *Williams*, 54 So. 3d at 1143.   Thus, the latter conviction and sentence imposed thereon were vacated. *Id.*

The Court will address Petitioner's ineffective assistance claim along with Claim Six, her other ineffective assistance claim.

B. Claim Two: Improper Backstrike and *Batson* Challenge

In Petitioner's second claim, she argues that the trial court erred in allowing the State to exercise a peremptory challenge against potential juror Angela Tatum, after having already sustained the defense's *Batson* objection to the State's prior peremptory challenge of Tatum. [doc. # 4-1, p. 15-16].  Petitioner also argues that even if the court properly entertained the State's second peremptory challenge, the court should not have granted the challenge because the State's given reasons for striking Tatum were not race-neutral.  *Id.*

i. Background

During voir dire, Champagne, one of codefendant Williams' attorneys, made a comment

about Williams' race.  Champagne stated, "[i]t wouldn't be fair if you thought: '[w]ell, just because Andre' Williams is black that he's a crook.  Because every time I watch TV, all the blacks are crooks."  [doc. # 16-3, p. 182].  After the prosecution exercised a peremptory strike against potential juror Tatum because of her purported agreement with Champagne's comment, the trial court asked the State to give a race-neutral basis.  *Id.* at 232.  Mr. Cook, one of the prosecutors, responded:

> I watched [Tatum's] body language.  And I watched her, I was watching her, specifically, when Mr. Champagne [said] . . . 'All defendants that are on trial on television are black. They're all black.' And she's sitting there like this (nods yes). And that really struck me. . . . And that gave us the impression that she's agreeing that ... here we've got some more black people on trial. She's the only black person that we've even moved to strike. And we have stricken other people. And guarantee you the people that we've moved to preempt [sic] on this particular panel were other white people. And they couldn't tell me why we struck them, because they liked them.

*Id.*  After listening to the prosecution's response, the trial judge ultimately stated, "[i]n reviewing the questions, in all candor, I did not hear anything that . . . indicated that the State had reasons to remove [Tatum].  I'm going to grant the motion and put her back on the jury."  *Id.* at 233.

The following day, the parties were given the opportunity to exercise back strikes.  The prosecution again exercised a peremptory challenge against Tatum.  After reminding the trial court of the racial remarks Champagne made during voir dire, the State informed the court that McKee, another prosecutor, had actually sued Tatum in the past.  [doc. # 16-4, p. 127-128].  The State also pointed out that the District Attorney's Office had pending insufficient check charges against Tatum.  *Id.*

After consideration, the trial court stated:

The Court took the position yesterday that, based on the question that I heard, I heard

6

no question elicited that caused me a great amount of concern. I took, and because . . . a racial issue has been raised, the Court was listening for some race-neutral reason. Yesterday, I heard none. Today . . . I hear a different reason. . . . And I think a Batson challenge can be denied, and it doesn't have to rise to the standard of cause. I think they have to show a reasonable reason to use a preempt [sic], based on something other than race.

I think, even more than the statement made about [District Attorney] Mark [McKee] being adverse to her, I think the fact that there are charges pending against her by the D.A.'s office, to me, would be sufficient to justify a [peremptory strike]. And I don't see anything wrong, I realize they didn't meet that challenge yesterday, but I don't see anything wrong with them raising that anew. And I'm gonna grant the backstrike.

*Id.* at 131.

ii. Analysis: Improper Backstrike

Petitioner first argues that the trial court improperly entertained the State's backstrike against potential juror Tatum.  [doc. # 4-1, p. 15-16].  Stated differently, Petitioner contends that once a trial court has ruled on a *Batson* issue with regard to a potential juror, the State should not be allowed to peremptorily challenge that same juror at a later time.  *Id.* at 25.

The timing of peremptory challenges in Louisiana is governed by La. C. Cr. P. art. 795. Article 795 states, "[p]eremptory challenges shall be exercised prior to the swearing of the jury panel." La. C. Cr. P. art. 795(B).  The court in *Riddle v. Bickford*, 785 So. 2d 795, 800 (La. 2001), interpreted the statute and held that "the availability of back-striking in criminal cases is established beyond question in Louisiana."

It should be noted that Petitioner makes no constitutional challenge to Article 795.  To underline, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Here,  Petitioner only makes a conclusory assertion that "[o]nce the

7

court made the initial determination to reseat juror Tatum, it should not have entertained the second peremptory challenge urged by the State." [doc. # 4-1, p. 25]. Petitioner fails to allege any actual constitutional violation; therefore, her claim is not cognizable under *habeas* review.

To the extent that Petitioner challenges the Louisiana courts' interpretations of Article 795, a state court's construction of its own statute is binding on this Court. Construction of state statutes is conclusively a matter of state law of which state courts are the final arbiters. *See N.Y. v. Ferber*, 458 U.S. 747, 767 (1982) ("[T]he construction that a state court gives a state statute is not a matter subject to our review."). "Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law." *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011). It is not the function of a federal court in a *habeas* proceeding to review a state's interpretation of its own law, and this Court must defer to the state courts' interpretation of its statute. *Rocha v. Thaler*, 626 F.3d 815, 2010 WL 4630794, at *3 (5th Cir. 2010). In the case at bar, the Court cannot question a Louisiana court's determination that backstriking is established beyond question. This Court's review of the state court's construction of its own statute is limited to deciding whether the interpretation violated the Constitution, laws, or treaties of the United States. Petitioner has raised no such claim. Accordingly, Petitioner's claim should be **DISMISSED**.

   iii. Analysis: *Batson* Challenge

Petitioner also argues that even if the trial court properly allowed a second peremptory challenge, the State did not provide the trial court with any race-neutral reason for striking Tatum.

*Batson* requires defendants to demonstrate that the State used peremptory challenges in violation of the Equal Protection Clause.  *Batson v. Ky.*, 476 U.S. 79, 96-98 (1986).  Since *Batson* is clearly established Supreme Court precedent, under 28 U.S.C. § 2254(d)(2), Petitioner must demonstrate that the trial court's decision in not finding a *Batson* violation was either contrary to or involved an unreasonable application of *Batson*.

The *Batson* Court created a three-step analysis for trial courts to evaluate a defendant's claim of a racially discriminatory peremptory challenge.  *Id.* at 96-98.  First, "a defendant must make a *prima facie* showing that the prosecutor exercised his peremptory challenges on the basis of race."  *Id.* at 96.  Second, "[o]nce the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a [race] neutral explanation" for the use of the peremptory challenge.  *Id.* at 97.  Third, and finally, the "trial court then will have the duty to determine if the defendant has established purposeful discrimination."  *Id.* at 98.

In *Hernandez v. N.Y.*, 500 U.S. 352, 360 (1991), the Supreme Court held that the reasons offered to explain the exercise of a peremptory challenge should be deemed race-neutral unless a discriminatory intent is inherent in those reasons.  In addition, the Court stated that a reviewing court should give a trial judge's findings on discriminatory intent great deference and should not reverse them unless they are clearly erroneous.  *Id.* at 364-65.  The presumption of validity attaching "to a trial court's factual finding at *Batson's* third step . . . is doubly strong when the *Batson* finding is under collateral attack in *habeas*."  *Miller-El v. Dretke*, 545 U.S. 231, 284 (2005).  Likewise, the Court in *Rice v. Collins*, 546 U.S. 333, 334 (2006), admonishes courts from substituting their evaluation of the record for that of the trial judge.

Thus, here, it is Petitioner's burden to prove racial discrimination by clear and convincing

9

evidence.  As stated above, the prosecutor offered three race-neutral reasons for striking Tatum.

Petitioner presents no clear and convincing evidence to refute the trial judge's acceptance of the

prosecutor's reasons.  The state trial judge had the benefit of observing, firsthand, the jury panel,

the attorneys, the questions asked, and the overall atmosphere of the voir dire.  The judge was in

the best position to determine whether the prosecutor's stated reasons for striking Tatum were

credible.  On this record, the state court's application of *Batson* was not unreasonable.

Petitioner's claim should be **DENIED**.

C. Claim Three: Consolidation

For Petitioner's third claim, she argues that the trial court improperly consolidated both

her offenses and the Defendants into a single trial.  [doc. # 4-1, p. 30].  In response, the State

contends that Petitioner is precluded from raising these claims because she did not

contemporaneously raise any objections to consolidation in the trial court.  [doc. # 14, p. 24].

Agreeing with the State, the Second Circuit Court of Appeal determined that Petitioner

was precluded from raising these claims because Petitioner, in violation of La. C. Cr. P. art. 841,

"did not contemporaneously raise that objection in the trial court."  *Williams*, 54 So. 3d at 1141.

Generally, a federal court will not review a question of federal law decided by a state

court if the decision of that state court rests on a state ground that is both independent of the

federal claim and adequate to support that judgment.  *See Glover v. Cain*, 128 F.3d 900, 902 (5th

Cir. 1997).  This "independent and adequate state law" doctrine applies to both substantive and

procedural grounds and affects federal review of claims that are raised on either direct or

collateral review.  *Amos v. Scott*, 61 F.3d 333, 388 (5th Cir. 1995).  Procedural default does not

bar federal court review of a federal claim raised in a *habeas* petition unless the last state court to

render a judgment in the case has clearly and expressly indicated that its judgment is "independent" of federal law and rests on a state procedural bar. *Glover*, 128 F.3d at 902. A state court expressly bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a defendant's claim. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). Similarly, to be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Id.* With that in mind, "[i]t is well-settled that [Louisiana's] contemporaneous-objection rule is an independent and adequate state procedural ground." *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002).

Here, the state appellate court issued the last reasoned opinion. That court determined that, because Petitioner did not object to consolidation in the trial court, she did not preserve the issues for appeal. *Williams*, 54 So. 3d at 1141. To be sure, the appellate court did reach the merits of Petitioner's claims, but only for the sake of argument. *Id.* Accordingly, it appears that Petitioner's claim is immune from federal review.

A petitioner, however, may be excepted from the procedural default rule if she can show cause for her default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902. To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded her efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

Here, Petitioner has not offered any cause for the default that would excuse the

procedural bar imposed by the Louisiana courts, nor does this Court's review of the record support a finding that any factor external to the defense prevented Petitioner from properly objecting.  In the same way, the record does not reflect any action or inaction on the part of the State which prevented Petitioner from properly raising an objection.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997).  Having failed to show an objective cause for her default, the Court does not need to determine whether prejudice exists.

Thus, Petitioner's claim is procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497.  To establish a fundamental miscarriage of justice, Petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  To satisfy this factual innocence standard, Petitioner must show that "but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Petitioner makes no real argument that a fundamental miscarriage of justice will occur if her claims are not reviewed by this Court.   Accordingly, Petitioner has failed to overcome the procedural bar to the instant claim.  Petitioner's claim is procedurally barred and should be **DISMISSED**.

D. Claim Four: Denial of Motions for Mistrial

Petitioner's fourth claim alleges that the trial court erred in failing to grant a mistrial on three different occasions.  [doc. # 4-1, p. 34].  Specifically, Petitioner contends that the trial

court, in denying motions for mistrial, violated La. C. Cr. P. art. 770, 771, & 775.  *Id.* at 36, 37.

However, Petitioner's claims do not involve consideration of any federal or constitutional law.  There is no mention or argument of any federal constitutional issue that this Court can ascertain.  "Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also presented."  *Leblanc v. Quarterman*, 2008 WL 2330746 at *6 (N.D. Tex. 2008); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). Rather, "[f]ederal habeas corpus review is limited to errors of constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).   In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.  *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).  Consequently, review of this claim is not proper on *habeas* review and should be **DISMISSED**.

E. Claim Five: Excessive Sentence

Next, Petitioner claims that the sentence imposed by the trial court–10 years for false imprisonment with a dangerous weapon and a concurrent 30 year sentence for armed robbery–was excessive, in violation of the Eighth Amendment.  [doc. # 4-1, p. 40].  However, because the Louisiana appellate court reversed Petitioner's conviction for false imprisonment, this Court need only consider Petitioner's armed robbery sentence.  *See Williams*, 54 So. 3d at 1136.

Federal *habeas* courts must accord wide discretion to a state trial court's sentencing decision, and claims arising out of the decision are generally not constitutionally cognizable. *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987) (citations omitted).  However, relief may be required where a petitioner can show that her sentence is outside the statutory limits or is wholly

13

unauthorized by law.  *Id*. at 923-24.  If a sentence is within the statutory limits, as here, a petitioner must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Id*. at 924 (citations omitted).

Petitioner was convicted of armed robbery and sentenced to 30 years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.  Petitioner contends that the sentence imposed was excessive for the following, *inter alia*, reasons: she has children who need a mother; she has an elderly parent who needs her attention; and she was under the influence of various drugs at the time of the offense.  [doc. # 4-1, p. 43-44].  According to the appellate court, however, the trial court considered Petitioner's reasons.  *Williams*, 54 So. 3d at 1142.  The trial court also considered the sentencing guidelines in La. C. Cr. P. art. 894.1.  [doc. # 16-6, p. 108].  Both courts determined that the seriousness and violent nature of Petitioner's actions, the possible harm to the victims, the fact that Petitioner was on probation, and the likelihood that she would commit another crime all supported the sentence imposed.  *Id.* at 94-95; *Williams* 54 So. 3d at 1142

The undersigned finds that, especially given the severity of Petitioner's crime, the state courts' determinations do not amount to arbitrary or capricious abuses of discretion.  As the appellate court noted, "[Petitioner] repeatedly threatened to blow off the victims' heads, and the defendants severed the phone lines to the victims' home before entering.  It is apparent the defendants had little regard for the lives of the victims, and this is reflected in the sentences." *Williams*, 54 So. 3d at 1142.  For these reasons, Petitioner's sentence was not unconstitutionally

14

excessive, and her fifth claim should be **DENIED**.

F. Claim Six: Ineffective Assistance of Counsel

In Petitioner's final claim, she alleges ineffective assistance of counsel, contending that counsel failed to object or move for a mistrial in response to a comment made by the State during closing argument; to make a motion to sever the cases of Petitioner and her codefendants; and to object to her charges on double jeopardy grounds.  [doc. # 4-1, pp. 9, 49-51].

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of her constitutional right to a fair trial or deprives the petitioner of some other constitutional right.  *Strickland v. Wash.*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that her counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced her.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the

15

ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the

performance of counsel fell "outside the wide range of professionally competent assistance."  *Id.*

at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the petitioner must demonstrate that counsel's actions "were so

serious as to render the proceedings unreliable and fundamentally unfair."  *U.S. v. Saenz-Forero*,

27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).

Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the

defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v.*

*Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).

Along those lines, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v.*

*Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant

demonstrates that she would have received less jail time.  *U.S. v. Grammas*, 376 F.3d 433, 436

(5th Cir. 2004).

i. Objecting to the State's Closing Argument Comments

Here, Petitioner first claims that trial counsel failed to timely object or move for a mistrial

after an alleged improper remark made by the prosecutor during rebuttal closing argument.  [doc.

# 4-1, p. 49-50].  In its closing argument, the defense first stated, "[Betty Johnson] said [she] was

held at gunpoint by my client, and that her life was threatened.  But then again . . . where is the

other witness?  Where is Bobbie Jo?  Where is her [sic] to corroborate, corroborate that

testimony?  She's not here."  [doc. # 16-6, p. 67].  Petitioner alleges that counsel should have

objected when the prosecutor, in response to the State, stated, "[w]e'd much rather, Ladies and

Gentlemen, be able to try these defendants for two [2] counts of armed robbery, and two [2]

counts of false imprisonment, but we couldn't do that without Bobbie Jo." *Id.* at 68.  Neither an objection nor a motion for mistrial was made in response to the prosecutor's statement.

In *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990), the court made clear that counsel is not required to make futile motions or objections.  The Louisiana Code of Criminal Procedure provides: "[t]he state's rebuttal shall be confined to answering the argument of the defendant." La. C. Cr. P. art. 774.  In other words, "the State has the right to answer the argument of the defendant."  *State v. Thomas*, 572 So. 2d 681, 684 (La. App. 1 Cir. 1990).  Here, it is clear that the prosecutor did not commit any misconduct.  The prosecutor's  remark was made in response to the defense's intimation that the State did not call Bobbie Anders (the other victim) because Anders' testimony may have been adverse to the State's position.

Because the prosecution did not commit any misconduct, Petitioner's counsel did not render ineffective assistance by failing to object to the prosecution's closing argument.  Stated differently, any objection to the prosecutor's remark would have been groundless.

Alternatively, even if the prosecutor's comment was inappropriate, counsel's failure to object cannot be faulted.  The Fifth Circuit has recognized that whether to object during closing argument is a matter of trial strategy, which is ill-suited to second-guessing.  *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992).  Where the objection proposed by a defendant has only questionable merit, at best, an attorney may make a strategic choice to forego such an objection to avoid antagonizing the jury.  *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992); *Spicer v. Cain*, 2007 WL 4532221 at *10 (E.D. La. 2007) (noting that this is "especially . . . true with respect to possible objections to a closing argument, which jurors are instructed not to view as evidence").  In sum, Petitioner's claim is meritless and should be **DENIED**.

17

ii. Failure to Make a Motion to Sever

Petitioner next argues that her counsel was ineffective because counsel failed to make a motion to sever the cases of Petitioner and her codefendants.  [doc. # 4-1, p. 51].  Petitioner contends that counsel's failure to move to sever prejudiced her trial in the following ways: (1) if she had her own trial she could admit evidence of her codefendants' prior bad acts in order to show their influence over her as a result of her drug addiction; (2) there was an atmosphere of hostility between Champagne (Defendant Williams' attorney) and prosecutor McKee that would not have existed if Petitioner had a separate trial; (3) because she is a white female and her codefendants are black, a separate trial would have alleviated any bias the jury might have harbored as a result of her connection with two black males; and (4) a separate trial would have revealed that Petitioner was used by her codefendants to gain entrance to the house.  [doc. # 4-1, pp. 33-34, 52].

However, there is nothing to suggest that a motion to sever would have been successful. In other words, Petitioner cannot show that her counsel's conduct was unreasonable, given the law in Louisiana and in the Fifth Circuit.  Once more, counsel cannot be considered ineffective for failing to file a meritless motion.  *U.S. v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

To begin with, the Fifth Circuit has held that the mere fact that co-defendants have mutually antagonistic defenses does not require severance.  *Brown v. Dretke*, 419 F.3d 365, 372 (5th Cir. 2005).  When severance is not required as a matter of law, counsel's failure to seek such relief does not constitute incompetency.  *U.S. v. Garza*, 563 F.2d 1164, 1166 (5th Cir. 1977). Stated differently, if "severance is not required as a matter of law, the failure to seek such relief can amount to nothing more than a mistaken tactical decision . . . ."  *Id.*

18

Thus, to assess counsel's performance, the Court must consider the parameters under which the trials could have been severed. *Jones v. Cain*, 2010 WL 3924010, at *28 (E.D. La. 2010).  Pursuant to La. C. Cr. P. art. 704, jointly indicted defendants shall be tried jointly, unless the State elects to try them separately or, upon motion of a defendant and after a contradictory hearing, the trial court satisfies itself that justice requires a severance. *Id.*  To establish that "justice requires severance" in Louisiana, a defendant must show by "convincing evidence" that his defense will be antagonistic to the defense offered by the other defendant. *Id.*  A defense is antagonistic to the defense offered by the other defendants if "a codefendant attempts to place the blame on the other, causing each defendant to defend against his codefendant as well as the State." *Simms v. Cain*, 2008 WL 624073 at *22 (E.D. La. 2008).

However, "the mere allegation of antagonistic defenses is insufficient and a defendant must show that actual prejudice will result from a joint trial.  The actual prejudice standard requires a showing that the defendant would probably not have been convicted had he been accorded a separate trial." *Id.* at *29.  Finally, under federal law, the U.S. Supreme Court has held that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993).

Here, Petitioner has failed to demonstrate that she was entitled to a severance of her trial from that of her codefendants under the standards set forth above.  Petitioner's speculative allegations of prejudice outlined above do not amount to the actual prejudice needed to establish that justice required a severance.  Petitioner has not shown, and the record does not support, a finding that she probably would not have been convicted had she been accorded a separate trial.

19

As the appellate court reasoned, " [t]he proof of the defendants' identities was essentially conclusive as they were caught fleeing from the scene. The facts of the case were simple enough to allow a jury to separate each defendant's participation without difficulty." *Williams,* 54 So. 3d at 1141.

Consequently, counsel's decision not to file a motion to sever amounts to nothing more than a tactical decision.  Even if counsel had filed a motion for severance, it would have had no merit, and counsel cannot be considered ineffective in failing to file a meritless motion. Accordingly, it is recommended that Petitioner's claim be **DENIED**.

iii. Failure to Raise the Issue of Double Jeopardy

In Petitioner's final ineffective assistance charge, she argues that counsel was ineffective for failing to object to her charges on grounds of double jeopardy.  [doc. # 4-1, p. 15].

Petitioner's claim is without merit because the Louisiana appellate court found that Petitioner was subjected to double jeopardy when she was convicted of armed robbery and false imprisonment with a dangerous weapon. *Williams*, 54 So. 3d at 1136.  Because the court reversed Petitioner's conviction for false imprisonment with a dangerous weapon, the court likewise reversed Petitioner's sentence. *Id.* at 1143.  As a result, Petitioner has not suffered any prejudice from counsel's failure to object on double jeopardy grounds. *See Grammas*, 376 F.3d at 436 (holding that prejudice generally exists only if the defendant demonstrates that she would have received less jail time).  Accordingly, it is recommended that Petitioner's claim be **DENIED**.

**CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas*

20

*corpus* filed by Petitioner Catrenia Maynor [doc. # 4] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District**

**Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th  day of October, 2013.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE